Wright, J.
The question in the case, on the facts, is a narrow one. The defendants discounted a bill of exchange in the regular course of business, which was endorsed by one Converse, their cashier, and transmitted to the Ohio Life Insurance and Trust Company, in the city of New York, for collection only. Before the bill matured the trust company transferred it- to the plaintiffs as collateral security for borrowed money. The plaintiffs, at the time of such transfer, had no actual notice of the ownership of the bill by the defendants, but received the samé bona fide, and in the usual course of business. The bill was made payable to the order of D. C. Converse, cashier, and endorsed “pay to the order of Edwin Ludlow, cashier, D. C. Converse, Cr,” The only question is, whether this was the endorsement of the Muskingum Branch Bank, or of Converse individually. If it was an official and not the private act of Converse, in fact done on behalf of the bank, as the bill was negotiated to the plaintiffs, who are bona fide holders, the endorsement would conclude the bank in favor of them, though the Ohio Life Insurance and Trust Company, its agent, acted in bad faith, and disobeyed its instructions, by negotiating the bill for its own benefit instead of collecting it.
It seems to me, on the facts, that but one interpretation can be given to Converse’s acts; Converse was the defendants’ cashier. A bill drawn to “ D. C.?Converse, cashier,” was discounted by the defendants. The facts are- found, and it is not controverted, that the Muskingum Bank owned the draft, and that it was sent to the Ohio Life Insurance and Trust Company for collection.- The trust company received it from the bank with the endorsement “D. C. Converse, Cr.” Now, how can it be pretended that this was the individual and not the official act of Converse ? *630 Although “ D. C. Converse, cashier,” was the payee of the draft, the bank claimed it as its property, and to deal with it as such. Indeed a bill .drawn to “ D. C. Converse, cashier,” is¡ in judgment of law, payable to the bank of which he is the officer. Being the property of the bank, the endorsement “ D. C. Converse, Cr.” was made by the proper officer, for a proper purpose. It was, therefore, an official endorsement. Had there been nothing in the case to connect- the bill with the defendants’ bank, Converse would have been regarded as the payee and the endorser individually, and the abbreviation affixed to his name considered as a descriptio personae; but when his official position is shown, connected with the facts that the bill was the property of the bank, and in the regular course of business was transmitted to its agent for collection, it is then shown that the endorsement is an official one. The case of The Bank of Genesee v. Patchin Bank (19 N. Y. R. 312), is, on this question, a controlling authority. In that case, S. B. Stokes, the cashier of the Patchin Bank, sent to. the Bank of Genesee, to be discounted, a bill of exchange payable to the order of “ S. B. Stokes’ Cas.,” endorsed by him with the same addition to his signature, and enclosed in a letter dated at the banking house, and signed “ S. B. Stokes, Cas.” It was held that these circumstances imported that the endorsement was that of the Patchin Bank, in the regular course of-business, and not that of S. B. Stokes individually. There is this difference only in the cases! In the one cited the bill was sent for discount, in this for-collection; but plainly that could not affect the question. The intention in each case to make the bank a party to the paper is equally carried out.
I think, therefore, the endorsement in this ease was that of the Muskingum Bank, and bound it as such to a bona fide holder of the bill. Its liability as endorser certainly cannot be qualified by the consideration that the bill was sent to its agent not to be negotiated, but for collection *631 only. The object of the endorsement was to create a privity between any holder and the parties to the paper, and it accomplished it. There was nothing on the face of the endorsement to convey to third parties knowledge of the single purpose for which it was made, nor were they even bound to ascertain that extrinsic fact. The bank reposed confidence in the caution of its cashier, and in the honesty of its agent. - The cashier neglected to add the restrictive words which would have limited the negotiability of .the bill, and the agent abused the trust. I do not think that the plaintiff, who became "a holder in good faith, and in the regular course of business, should bear a loss occasioned by the negligence of the one and the bad faith of the other agent.
The judgment of the supreme court should be affirmed.
Ingraham, J.
The facts in this case show that this note, payable to the order of the cashier of the defendant, and •endorsed by him as cashier, was sent to the Ohio Life and Trust Company for collection, and was by them fraudulently discounted with the plaintiffs. The question is whether the defendants are liable as endorsers,
It is conceded that under the case of The Bank of Genesee v. The Patchin Bank (19 N. Y. Rep. p. 309), the bank would not be liable on such an endorsement, if made is an accommodation endorsement, and known to the party taking it to be such. In Babcock v. Beman (1 Kern. 200), it was held that such an endorsement by the cashier was not the endorsement of the cashier individually. And the subsequent decision in The Bank of Genesee v. The Patchin Bank (19 N. Y. Rep. p. 312), established the liability of a corporation on such an endorsement where the party discounting it was informed or had reason to believe the proposed discount was on behalf of the bank for whom the cashier acted. “The endorsement of Stokes (Denio, J., says), the facts being shown, was the endorsement of the *632 bank, and not Stokes’ individual act, and is just as available as though it had been perfect in form.”
These cases dispose of the questions as to the liability of the defendants, both as to the form of the' endorsement and as to the extent of the defendants’ liability when the note is discounted for the benefit of the bank.
The only remaining question is whether the bank is liable on such an endorsement where the note has been fraudulently put in circulation by an agent of the bank without any authority to do so.
Upon the trial of this cause it was found by the referee that the plaintiffe were bona fide holders for a good con sideration, in the usual course of their business, of this paper; that the note was passed to the plaintiffs by thy Ohio Life Insurance and Trust Company without authority, and that the note was sent to that company by the bank fox collection only.
In the cases of The Farmers' and Mechanics' Bank of Kent v. The Butchers' and Drovers' Bank (16 N. Y. 125) and Meads v. The Merchants' Bank of Albany (25 N. Y. 143), the bank was held liable to a bona fide holder upon, a certificate of its officers, although such certificate was false, upon the ground that the officer so certifying way authorized to do similar acts for the bank and the holder was justified in relying thereon. This case differs from those only in the fact that the note here was received by the bank as collateral security for money then advanced. The trust company had authority to discount notes, and there is nothing to show that the bank had any reason to suppose this note was not taken by them in the ordinary course of business. '
After it is settled that the bank would be liable if the note had been discounted for the use of the corporation, and that, they had authority to make stich a contract, I can see no good reason why the same liability should not exist to a bona fide holder for value as in the case of any indi *633 vidual whose paper is fraudulently put in circulation. The principle upon which an individual is held liable, viz: that of having employed an agent and enabled him to pass the paper away and receive the proceeds by trusting him with it, applies just as strongly to the bank in the present case. The bank employed the trust company as its agent to cob lect the note, and placed it with the company for that purpose. By having the possession, they were enabled to pass it to the bank and receive its value from them. Under the cases above cited, I see no reason why the bank should not be held liable. It is said that where a note is signed or endorsed “A. B.,’agent,” the person taking it is bound to inquire as to the authority of the agent. That would be so far as to ascertain the fact of agency. If, in the present case, Converse, who endorsed the note as cashier, was not in fact such officer, the plaintiffs could not recover. They would have been bound to ascertain that fact before trusting to his acts in that capacity; but when that is shown, then, according to the cases, his power as cashier authorizes him to transfer paper by endorsement, and it is not necessary to make any .special inquiry as to his authority to endorse any particular note.- (Mechanics' Bank Association v. N. Y. and Saugerties White Lead Co., 23 How. Pr. p. 74; Merchants' Bank v. McColl, 6 Bosw. 473; Belmont Branch Bank v. Hoge, 7 Bosw. 543); but only as to his official character and authority.
The judgment should be affirmed.
All the judges concurring, judgment affirmed.